UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-23023-CIV-SEITZ/GARBER

ROSA L. NELSON,
    Plaintiff,
v.

CAROLYN W. COLVIN,,
Acting Commissioner of Social Security,
    Defendant.
_____/

## REPORT AND RECOMMENDATIONS

    THIS CAUSE is before the Court upon reassignment by the clerk. (DE 35.) Pursuant to such reassignment, the Court has received and reviewed plaintiff Rosa L. Nelson's Motion for Summary Judgment with Supporting Memorandum of Law (DE 24); defendant Carolyn W. Colvin, Acting Commissioner of Social Security's Motion for Summary Judgment with Supporting Memorandum of Law and Opposition Response to Plaintiff's Motion for Summary Judgment (DE 25 & 26); and Nelson's Reply thereto (DE 27). The general issues before this Court are whether the record contains substantial evidence to support the denial of benefits to the plaintiff and whether the proper legal standards were applied.  Upon a review of the filings and the record in this case and upon due consideration, the undersigned respectfully RECOMMENDS that the administrative law judge's decision be REVERSED and REMANDED for the reasons set forth below.

I.    **Brief Statement of the Facts and Procedural History**

    Pursuant to 42 U.S.C. § 405(g), Nelson seeks judicial review of the final administrative decision of the Commissioner of Social Security, denying her claim for Supplemental Security Income payments. Shortly after a hearing, during which Nelson testified, Administrative Law Judge Frederick McGrath issued his decision, finding Nelson not disabled as defined under the Social

Security Act.

In reaching his decision, Judge McGrath applied the sequential evaluation process that is used in evaluating disability claims. 20 C.F.R. § 416.920. Briefly, this process requires the ALJ to consider, in sequence, whether a claimant: (1) is working; (2) has a severe impairment, as defined in the regulations; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to her past relevant work; and (5) if not, whether she can perform other work. *Id*. Of course, if the claimant is working or can return to her past relevant work, the ALJ will find that she is not disabled and the inquiry will usually end at either step one or four. Similarly, if the ALJ finds that the claimant does not have any severe impairments, no further analysis is required and the claimant will be determined to be not disabled at step two. Conversely, at step three, if the claimant is found to have an impairment that meets or equals the requirements of an impairment listed in the regulations, she will be automatically classified as disabled and that too will end the inquiry, albeit in the claimant's favor. If the evaluation proceeds to step five, the ALJ will take into account the claimant's residual functional capacity, age, education, and work experience and determine whether there are a sufficient number of jobs in the national economy that the claimant can perform or whether she is disabled as defined under the Act.

In commencing with his analysis, the ALJ determined, at step one, that Nelson was not working during the relevant period. Prior to her application, Nelson had last worked as a cook, from January to March of 2002; and before that as a ticket taker, from November 1994 to April 1995. (R at 179; DE 18-2, 5.) Nelson's earnings from these jobs were minimal. (R at 99-102; DE 18-1, 103-6.)

Since Nelson was not working, the ALJ proceeded to the second step and found that Nelson had the following severe impairments: "chronic obstructive pulmonary disease, history of

2

fibromyalgia, low back pain, stable hypertension, depressive disorder, NOS and R/O cognitive disorder." (R at 26; DE 28-1, 30.).[1]

Continuing to the third step, the ALJ determined that Nelson's impairments or combinations thereof did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Since none of Nelson's impairments were so severe as to meet one of the listings, the ALJ considered the medical evidence and determined Nelson's residual functional capacity, finding that she can: "occasionally lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds[;] sit, stand and walk for six hours in an eight-hour workday." (R at 27; DE 28-1, 31.) In terms of restrictions, the ALJ concluded that Nelson: "should refrain from climbing ladders, ropes, scaffolds and should refrain from working around unprotected heights and hazardous machinery[; and] should also avoid concentrated exposures to fumes, odors, dusts, gases and poor ventilation." (R at 27-28; DE 28-1, 31-32.) He further surmised that Nelson "should avoid working with the general public." (R. At 28; DE 28-1, 32.)

Based on this residual functional capacity, the ALJ reach a number of conclusions. First, at step four of his analysis, he found that Nelson would be able to perform her past relevant work as a ticket taker and cook. While ordinarily this would end the inquiry in a finding of not disabled, the ALJ continued his analysis in the alternative, pursuant to the analysis at step five, and concluded that, even if Nelson could not perform her past relevant work, she could still perform the full range of medium work and therefore "would be able to perform numerous activities consistent with substantial gainful employment." (R. at 33-34; DE 28-1, 33-34.)

---

[1] The record upon which the ALJ based his findings is voluminous. Very little of this record, however, pertains to the issues raised by the parties. Thus although the record has been reviewed, the Court finds no need to rehash herein the intricacies of Nelson's medical history except where necessitated by the parties' arguments. The ALJ's determinations regarding the bulk of the record is not otherwise in disupute.

II. **Standard of Review**

The ALJ's decision is reviewed to determine if it is supported by substantial evidence and based on proper legal standards. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (internal citations omitted). When supported by substantial evidence, the Commissioner's findings are conclusive. *Richardson v. Perales*, 402. U.S. 389, 401 (1971). Substantial evidence is more than a scintilla, but less than a preponderance, and is generally defined as such relevant evidence as reasonable mind would accept as adequate to support a conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). Although the ALJ's factual findings are limited to a deferential standard of review, no presumption of validity is applied to his legal conclusions, including a determination of the appropriate legal standards to be applied in analyzing and deciding a claim for benefits. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

With respect to the sequential analysis, the burden rests with the claimant through the first four steps of the inquiry and then shifts to the Commissioner at step five. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

III. **Discussion**

Nelson does not object to any of the ALJ's findings from step one through his determination of her residual functional capacity. Instead, in seeking to have the ALJ's decision reversed and remanded, Nelson focuses only on errors she alleges that the ALJ made at steps four and five of his analysis. First, Nelson alleges, her jobs as ticket taker and cook do not qualify as past relevant work and therefore the ALJ's analysis at step four, finding she could return to her past relevant work, was in error. And second, she claims, the ALJ erred by not soliciting testimony from a vocational expert at step five. The Court agrees with Nelson on both points.

A. **The ALJ Committed Error by Finding that Nelson Had Past Relevant Work as a Ticket Taker and Cook**

Nelson takes issue with the ALJ's determination that she has past relevant work as a ticket taker and cook. She argues that, although she performed these jobs, the work does not meet the definition of relevant work. Under the regulations, "past relevant work" is defined as "work . . . done within the past 15 years, that was substantial gainful activity, and that lasted long enough . . . to learn to do it." 20 C.F.R. § 404.1560(b).

As an initial matter, Nelson complains that her work as a ticket taker falls outside of the fifteen-year window as required under the regulations. The Court finds this point well taken as the hearing before the ALJ took place in September 2010 and Nelson stopped working as a ticket taker in April 1995. The Court therefore does not find that Nelson's work as a ticket taker satisfies the definition of past relevant work.

With respect to her work as a cook, from January to March of 2002, Nelson submits that her de minimus earnings preclude that past work as qualifying as substantial gainful activity. The regulations set forth an algorithm, keyed to the national average wage index, that provide guidelines to assist in the determination of whether a claimant's past work constitutes substantial gainful activity. 20 C.F.R. § 404.1574; *Childs v. Astrue*, No. 8:07-cv-299-T-TBM, 2008 WL 686160, at * 4 (M.D. Fla. Mar. 10, 2008). Here, Nelson purports to have earned only $905 in three months' time in 2002. She has set forth, and the Commissioner has not protested otherwise, that such earnings are not sufficient for a presumptive finding of substantial gainful activity. According to a chart published by the Social Security Administration itself, such an amount would not even qualify for the presumption had it been all earned primarily in one month. *See* Monthly Substantial Gainful Activity Amounts by Disability Type, *available at* http://www.ssa.gov/oact/cola/sga.html. Further, the

5

Commissioner has not presented any evidence or argument to rebut the presumption that this earning amount indicates that Nelson's work as a cook in 2002 was not substantial gainful activity. The Court therefore finds that Nelson's past work as a cook does not qualify as substantial gainful activity. The ALJ's conclusion then, that Nelson is able to perform her past relevant work, was in error. As discussed in the following section, however, this does not end the Court's analysis in that the ALJ also proposed, in the alternative, that Nelson's residual functional capacity would allow her to adjust to other jobs that exist in significant numbers in the national economy.

B.     **The ALJ Committed Error by Not Seeking Testimony from a Vocational Expert**

Although the ALJ noted that Nelson could perform "the full range of medium work," (R. at 30; DE 28-1, 34), included within the ALJ's residual functional capacity analysis were a number of restrictions. The ALJ noted that Nelson should refrain from: climbing ladders, ropes, and scaffolds; work involving unprotected heights and hazardous machinery; exposure to fumes, odors, dusts, gases, and poor ventilation; and working with the general public. (R.at 28; DE 28-1, 32).

Nelson argues that the aforementioned restrictions, particularly the avoidance of working with the general public, significantly erode the occupational base of medium work thus necessitating the testimony of a vocational expert. The Commissioner counters that the ALJ was entitled to rely exclusively on the Medical Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (commonly referred to as "the grids"), without the aid of a vocational expert, because it was within his purview to determine that none of Nelson's non-exertional limitations had an appreciable impact on the occupational base of medium work

On the one hand, the Court finds the Commissioner's argument persuasive with respect to the bulk of the restrictions listed by the ALJ. Based on language from various Social Security

Rulings and the argument presented by the Commissioner, the Court is convinced that the occupational base of a person who is otherwise capable of medium work would not be significantly eroded by not being able to: climb ladders, ropes, and scaffolds; work around unprotected heights and hazardous machinery; or tolerate exposure to fumes, odors, dusts, gases, and poor ventilation. Soc. Sec. Rul. 83-14, Titles II and XVI: Capability to Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments ("Relatively few jobs in the national economy require ascending or descending ladders and scaffolding."); Soc. Sec. Rul. 85-15, Titles II and XVI: Capability to Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments (using restrictions from unprotected elevations and dangerous moving machinery, as well as intolerance of fumes, odors, dusts, gases, and poor ventilation, as examples of impairments that do not have a significant effect on work that exists at all exertional levels). Though possibly all of these restrictions, taken together, might result in a great enough reduction of the number of available jobs, Nelson has not offered any argument or support in that regard. Based on the record before it, the Court concludes that there was substantial evidence to support this aspect of the ALJ's opinion.

On the other hand, the Commissioner's argument falls flat with respect to Nelson's inability to do work involving the general public. The Court agrees with Nelson that it was error for the ALJ to apply the grid framework and not seek guidance from a vocational expert with respect to this limitation. As set forth by the Eleventh Circuit, "exclusive reliance on the grids is not appropriate either when the claimant is unable to perform a full range of work at a given residual level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989)(internal quotations and citations omitted) Without

accounting for Nelson's inability to do work that involves the general public, the ALJ concluded that, if Nelson was limited to the full range of medium work, based on her age, education, work experience, and residual functional capacity, she would be capable of performing jobs that exist in significant numbers in the national economy. (R. at 29; DE 28-1, 33.) Although the ALJ did not actually discuss the issue, it appears that he must have concluded that Nelson's inability to interact with the general public would have an inconsequential effect on the occupational base of medium work. The parties dispute whether this is indeed the case.

  The Commissioner relies on language from a Social Security Ruling and the regulations to support her argument. In each instance, however, the Court finds the Commissioner's reliance flawed. For example, the commissioner cites Social Security Ruling 85-15 for the proposition that "the primary work functions in the bulk of unskilled work relate to working with things, rather than with people." (Def.'s Mot. DE 25, 8 (citing SSR 85-15 at * 4).) Indeed the ruling itself sets forth that "[unskilled] jobs ordinarily involve dealing primarily with objects, rather than data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis." SSR 85-15 at * 4. But just because unskilled jobs <u>primarily</u> involve dealing with objects, rather than data or people, does not mean that a significant number of unskilled jobs do not involve <u>any</u> work with the general public. There may be a large number of jobs where, although contact with the public isn't the primary focus of the job, the inability to interact at all with the general public would still preclude employment in that position because of even incidental contact.

  The ALJ did not provide any support for his apparent conclusion that this limitation would not significantly impact the availability of medium-work level jobs. Further, although not cited by

either party, the Court notes, as an aside, that there indeed appears to be support in some Social Security Rulings that a claimant's inability to interact with the public may ultimately have more than a minimal impact on the availability of jobs in the national economy. For instance, an example given in Social Security Ruling 85-15 involves someone who can no longer "frequently deal with the public" and the effect that that limitation might have on people of varying ages, education, and skills. In one case, according to the example, such a limitation could warrant a finding of disabled. In another, where the claimant is younger, better-educated, or more skilled, the decision would not necessarily be the same. In yet another example, Social Security Ruling 83-14 references the effect that limiting one's interaction with the public may have on the types of jobs available:

> Depending on the nature and extent of a person's mental impairment . . . relatively broad or narrow types of work may be precluded (e.g., dealing with a variety of abstract and concrete variables with nonverbal symbolism – a highly skilled level of work – <u>or dealing frequently with members of the public – a particular type of work at any level of complexity</u>).

(Emphasis added). Based on just these references alone, it is apparent to the Court that the ALJ should not have summarily concluded, without support from the record or a vocational expert, that restricting Nelson's contact with the general public would have an insignificant impact on the occupation base. Such ambiguities regarding the effect that this restriction might have, without any other available guidance, should be resolved by consulting a vocational expert. Absent testimony from a vocational expert, the ALJ's conclusory determination that Nelson is capable of the full range of medium work, despite her inability to work with the general public, is not supported by substantial evidence. The Commissioner, then, has not carried her burden, at step five, of establishing that Nelson can perform other work.

IV. **Conclusion and Recommendations**

Upon careful consideration, the Court finds that the ALJ's determination that Nelson could return to her past relevant work was in error. That determination is reversed. Further, the ALJ's decision to mechanistically rely on the grids, where there is no support for the conclusion that the limitation of not working with the general public would not impact Nelson's occupational base, is not supported by substantial evidence. That determination is reversed and remanded for further inquiry. The Court therefore

RECOMMENDS that the decision of the ALJ be REVERSED and that the case be REMANDED to the Commissioner so that a vocational expert can be consulted and for further proceedings not inconsistent with the above findings and conclusions.

Accordingly, it also the RECOMMENDATION of the Court that Nelson's Motion for Summary Judgment (DE 24) be GRANTED and that the Commissioner's Motion for Summary Judgment (DE 25) be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have fourteen days from the date of this Report and Recommendation within which to file written objections, if any, with the Honorable Patricia A. Seitz, United States District Judge. *See also* 28 U.S.C. § 636. Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 28th day of February 2014.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE